# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DOUGLAS K. JORDAN and LUCINDA :
JORDAN, Husband and Wife, **FILED** :

    Plaintiffs,    **SCRANTON** :   CIVIL ACTION NO. 3:CV-00-1915

    MAY 1 5 2002

    vs. :

    PER :

ROBERT J. STANZIOLA, ET ~~DEPUTY CLERK~~ (JUDGE CAPUTO) :

    Defendants. :

## MEMORANDUM

Presently before the Court is Defendants Robert J. Stanziola, Edward W. Drum, and Earl T. Miller's motion for summary judgment. (Doc. 24.) Defendants' motion for summary judgment will be granted in part and denied in part. Defendants' motion for summary judgment will be granted regarding Plaintiffs' claims under 42 U.S.C. § 1985 and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, as well as Plaintiffs' common law claims for abuse of process and wrongful termination. Defendants' motion for summary judgment regarding Plaintiffs' First Amendment Privacy claims, and Fourteenth Amendment substantive and procedural due process claims will also be granted. Defendants' motion for summary judgment will otherwise be denied.

## BACKGROUND

Plaintiff Douglas K. Jordan is a former Sugarloaf Township police officer.[1] Plaintiff Lucinda Williams is his wife. Defendants Stanziola, Drum and Miller are Sugarloaf Township Supervisors.

---

[1] As most of the claims involve Plaintiff Douglas Jordan, the term "Plaintiff" will be used to refer to him.

Plaintiff was hired as a full-time patrolman for Sugarloaf Township in 1982.  He became Acting Chief in March 1996, and a sergeant in August 1996.  Plaintiff stepped down as Acting Chief in April 1998, when Chief John Hudson was hired.

Beginning in the summer of 1998, Plaintiff's employment relationship with the Township began to deteriorate.  Plaintiff was accused of a number of actions, and occasionally was reprimanded for these actions.  On August 15, 1998, Plaintiff was accused of making critical remarks about the way another officer, Diane Fisher, handled a traffic accident.  On September 18, 1998, Plaintiff was accused of making baseless allegations that another officer, Tommy Brown, had improperly taken a police car home.  In October 1998, Plaintiff was charged with performing paid services for the Valley Emergency Ambulance Association on two (2) occasions  in June 1998.  Plaintiff was allegedly on duty on one of the occasions, and called in sick on the other.  On December 3, 1998, Plaintiff was charged with telling a citizen arrested by Officer Brown that his arrest was unconstitutional and that he should sue the Township.  On February 1, 1999, Plaintiff allegedly made a false report to the Luzerne County District Attorney's Office that Officer Fisher had committed perjury.  On August 27, 1999, Plaintiff was issued a written reprimand for allegedly using the women's restroom in the Township building where the police department is located.  On September 18, 1999, Plaintiff filed an unfair labor practice charge with the Pennsylvania Labor Relations Board, claiming that Officer Brown was getting undue overtime.  In February 2000, Plaintiff and Officer Fisher were issued written reprimands for quarreling.  In May, 2000, Plaintiff was charged with improperly aiding a civilian's attempt to repossess a backhoe during February 2000.

In October 1998, Plaintiff was disciplined for the June 1998 ambulance driving

2

incidents pursuant to the Police Tenure Act. Plaintiff was given a ten (10) day suspension for his conduct; however, on appeal, the Luzerne County Court of Common Pleas vacated the suspension and remanded with directions for the Township to proceed under the collective bargaining agreement, not the Police Tenure Act. The Township did not pursue further disciplinary action against Plaintiff, and the suspension was never imposed.

Plaintiff injured his back on December 25, 1998, and did not return to work until May 21, 1999. When he returned, Chief Hudson limited Plaintiff to office duty, citing Plaintiff's medical restrictions. Plaintiff argues that the limited duty actually exacerbated his back condition. Plaintiff submitted a number of notes from his physicians, in an attempt to convince Chief Hudson to allow him to go on patrol, but Chief Hudson did not alter his interpretation of the medical restrictions. Plaintiff testified that Chief Hudson slowly removed all of his cases from him during this period.

On January 19, 2000, the Township Board of Supervisors sent Plaintiff a letter, signed by Defendant Stanziola, informing Plaintiff that the Board had determined it was necessary for him to undergo a "psychological evaluation to confirm your fitness for duty." (Doc. 36, Ex. S.) Plaintiff complied and the psychologist found that Plaintiff did not appear to have "any psychological factors that would interfere with Mr. Jordan performing his duties as a police officer in a competent fashion at this time." (Doc. 36, Ex. T at 12.)

Plaintiff testified that, in April 2000, Officer Fisher, filling in as Acting Chief while Chief Hudson was on vacation, would not permit him to attend physical therapy sessions for his back injury. Plaintiff submitted an April 23, 2000 memo to Defendant Stanziola regarding this problem, stating that he would file for partial disability if he was not

3

permitted to attend the therapy sessions "while working." (Doc. 28 at 421; Doc. 36 Ex. N.)

Plaintiff testified that he called an ambulance from work on April 27, 2000 due to his back pain. (Doc. 28 at 470.) Plaintiff did not report to work or call in sick on April 28, 2001. (See id.) Plaintiff did call in sick on April 29 and 30, 2000. (See id. at 471.) Plaintiff returned to work on May 3, 2000. That morning, Plaintiff gave Chief Hudson a note from his doctor, stating that he was authorized to return to work, and a cover note from Plaintiff stating that his doctor would place him on disability if he was not returned to full duty within two (2) weeks. (Doc. 28 at 424.) Plaintiff testified that, an hour later, he was called into a meeting with Chief Hudson. At the end of the meeting, Chief Hudson placed Plaintiff on suspension and submitted a report to the Sugarloaf Township Board of Supervisors. On May 5, 2000, the Board of Supervisors voted to terminate Plaintiff, having considered "your recent actions, the statements you made at the 'Loudermill' hearing, and the previous disciplinary problems which you have had." (Doc. 28, Ex. F.)

Plaintiff filed the complaint in the present civil rights action on October 31, 2000. (Doc. 1.) Defendants moved for summary judgment on November 30, 2001. (Doc. 24.) Defendants' motion has been fully briefed and is ripe for disposition.

### LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if proof of its existence or non-existence might affect the outcome of the suit under the applicable

4

substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *See id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: 1) there is no genuine issue of material fact and 2) she is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d Ed. 1983). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial *Celotex* burden can be met simply by "pointing out to the district court . . . that there is an absence of evidence to support the non-moving party's case." *See id.* at 325. *See also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992). There is no requirement that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. *See Celotex,* 477 U.S.

5

at 322.  In such a situation, there can be no genuine issue of material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-257.  The court need not accept mere conclusory allegations or denials taken from the pleadings.  *See Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### 1.    42 U.S.C. § 1985

Defendants move for summary judgment on Plaintiff's § 1985 claim.  Plaintiff concedes this claim.  (Doc. 34 at 17.)  Defendants' motion for summary judgment regarding Plaintiff's § 1985 claim will be granted.

### 2.    Collateral Estoppel

Defendants argue that Plaintiff is collaterally estoped from bringing his § 1983, ADA and wrongful termination claims, in light of an arbitrator's finding that the Township of Sugarloaf had just cause to terminate Plaintiff.  (Doc. 27, Ex. A.)

Federal courts must give state court judgments the same effect that they would have in Pennsylvania state courts.  *See Courtney v. La Salle Univ.,* 124 F.3d 499, 503 (3d

Cir. 1997). Under Pennsylvania law, collateral estoppel applies where: (1) the issue decided in the prior action is identical to the issue in the later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with the party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *See Rue v. K-Mart,* 713 A.2d 82, 84 (Pa. 1998).

In the present case, collateral estoppel is not appropriate because the fourth prong of the test has not been satisfied. Under the fourth prong, the party against whom the defense is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding. Plaintiff argues he did not have a full and fair opportunity to litigate in the prior proceedings, because discovery was not available to him. Pennsylvania courts have held that no or limited discovery in the prior proceeding may prevent a party from receiving a full and fair opportunity to litigate. *See Meridian Oil and Gas Enterprises, Inc. v. Penn Central Corp.,* 614 A.2d 246, 241-2 (Pa. Super. Ct. 1992), *appeal denied,* 627 A.2d 180 (Pa. 1993). *See also Rue,* 713 A.2d at 86. In the present case, Plaintiff did not have an opportunity for discovery prior to the arbitration proceeding. Defendants' motion for summary judgment on the issue of collateral estoppel will be denied.

### 3.    Res Judicata

Where a final judgment on the merits exists, res judicata precludes a future lawsuit on the same cause of action. *See J.S. v. Bethlehem Area School District,* 2001 WL 1772013 (Pa. Commw. Ct. 2002). Under Pennsylvania law, res judicata applies where two actions "share an identity of the (1) thing sued on; (2) cause of action; (3) persons

7

and parties to the action; and (4) quality or capacity of the parties suing or sued."

*Chambers v. Upper Darby Township Service Comm'n,* No. 94-465, 1995 WL 631673 at

*2 (E.D. Pa. 1995) (quoting *Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir. 1988)).

The form in which the actions are commenced does not determine whether the

causes of action are the same. *See Chada v. Chada,* 756 A.2d 39, 44 (Pa. Super. Ct.

2000). Instead,

> [t]he essential inquiry is whether the ultimate and controlling
> issues have been decided in a prior proceeding in which the
> present parties had an opportunity to appear and assert their
> rights. When the cause of action in the first and second
> actions are distinct, or, even though related, are not so closely
> related that matters essential to recovery in the second action
> have been determined in the first action, the doctrine of res
> judicata does not apply.

*Id.* at 43-44.

In the present case, Plaintiff's § 1983 claim is not the same cause of action

decided by the arbitrator. The issue before the arbitrator was whether the Township of

Sugarloaf had just cause to terminate Plaintiff, and not whether Plaintiff's due process

rights were violated by the method in which he was terminated. The arbitrator also failed

to address the alleged surveillance of Plaintiff's family, and Plaintiff's right to association.

Thus, the arbitrator's decision does not estop Plaintiff from litigating his § 1983 claim.

In the present case, it is not clear that the issues decided in the arbitration

proceedings differ from the issues in Plaintiff's ADA claim. However, I decline to

determine whether the causes of action are the same, as I have found that Plaintiff has

not stated a prima facie case of disability discrimination. *See infra* at 14-19.

Plaintiff's wrongful termination claim is the same cause of action that was decided

8

in the arbitration proceeding.  Under Pennsylvania law, there is no common law cause of
action for the wrongful discharge of at-will employees, unless the discharge violates
public policy.  *See Murray v. Gencorp, Inc.,* 979 F. Supp. 1045, 1047 (E.D. Pa. 1997);
*Werner v. Zazyczny,* 681 A.2d 1331, 1335 (Pa. 1996).  Even if the public policy exception
is satisfied, a wrongful discharge claim will fail where the employer had a separate,
plausible and legitimate reason for the discharge.  *See Davenport v. Reed,* 785 A.2d
1058, 1064 (Pa. Commw. Ct. 2001) (citing *Geary v. United States Steel Corp.,* 319 A.2d
174 (1974)).  Unlike a claim under the ADA, a plaintiff alleging wrongful termination does
not have the opportunity to prove that the employer's proffered reason was pretextual.
Thus, the arbitrator's finding that Defendants had a legitimate reason for terminating
Plaintiff precludes Plaintiff from bringing the present wrongful termination claim.  Thus, the
first two (2) prongs have been satisfied regarding Plaintiff's wrongful termination claim,
but not Plaintiff's § 1983 or ADA claims.

 Under the third prong, principals and agents are parties in privity for res judicata
purposes.  *See Montella v. Berkheimer Assocs.,* 690 A.2d 802, 803-04 (Pa. Commw. Ct.
1995), *appeal denied,* 698 A.2d 597 (Pa. 1997).  As Defendants are agents of the
Township, and the Township was a party to the arbitration proceedings, the privity
requirement is met.  The arbitration decision is final, for the purposes of res judicata,
unless or until it is reversed on appeal.  *See Green v. Green,* 793 A.2d 788, 793 (Pa.
Super. Ct. 2001).  Thus, res judicata bars Plaintiff from litigating his wrongful termination
claim.

4.    **42 U.S.C. § 1983**

A.    **Substantive Due Process**

"To prevail on a non-legislative substantive due process claim, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment protection applies.'" *Nicholas v. Pennsylvania State University,* 227 F.3d 133, 139-40 (3d Cir. 2000) (quoting *Woodwind Estates, Ltd. v. Gretowski,* 205 F.3d 118, 123 (3d Cir. 2000)).  Not all property interests worthy of procedural due process protection receive substantive due process protection. *See Nicholas,* 227 F.3d at 140. To state a substantive due process claim, a plaintiff must allege that he was deprived of a property interest that is "fundamental" under the United States Constitution. *Id.* Where the challenged government action is not legislative, and the alleged property interest is not fundamental, the alleged conduct is completely outside the ambit of substantive due process protection and will be upheld so long as all procedural due process requirements have been met. *See id.* at 142.

At present, courts have "limited non-legislative substantive due process review to cases involving real property ownership." *Id.* In light of the Supreme Court's admonition that courts must exercise the "utmost care whenever we are asked to break new ground in this field," the Third Circuit has "been reluctant to extend substantive due process protection to other, less fundamental property interests." *Id.* (citations omitted.)  Indeed, this District has already held that public employment is not a "fundamental" property interest under the due process clause. *See Homar v. Gilbert,* 63 F. Supp.2d 559, 576 (M.D. Pa. 1999) (Vanaskie, J.).  In addition, reputation alone does not implicate a liberty interest under the less stringent Procedural Due Process Clause standard. *See Paul v.*

10

*Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155 (1976). I decline to extend non-legislative substantive due process review to Plaintiff's asserted property interest in public employment and liberty interest in reputation. Defendants' motion for summary judgment regarding Plaintiff's substantive due process claim will be granted.

**B.    Procedural Due Process**

In order to establish a violation of his procedural due process rights, a plaintiff must allege that a property or liberty interest protected by the Procedural Due Process Clause has been violated. Procedural due process protection extends to liberty and property interests created by federal or state law. *See Goss v. Lopez,* 419 U.S. 565, 572-73, 95 S.Ct. 729 (1975).

**1.    Property Interest in Public Employment**

A property interest in employment can be created expressly by state statute or regulation, arise from government policy, or arise from an implied agreement between an employer and an employee. *See Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694 (1972). As a state employee who could only be fired for-cause, Plaintiff had a property interest in his employment.

The Third Circuit has noted that, under *Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487 (1985),

> a public employee with a property interest in his job is entitled to "some kind of a hearing, a pretermination opportunity to respond, coupled with post-termination, administrative procedures." *Id.* at 542, 547-48, 105 S.Ct. at 1493, 1496. The hearing need not be elaborate, but the employee is entitled to notice of the charges, an explanation of the employer's evidence, and an opportunity to explain. *Id.* at 546, 105 S.Ct. at 1495. The notice may be served at the time of the pretermination hearing, *Gniotek v. City of Philadelphia,* 808

11

> F.2d 241, 244 (3d Cir. 1986), and it may be oral, *Copeland v.*
> *Philadelphia Police Dept.,* 840 F.2d 1139, 1145 (3d Cir. 1988).

*Edmundson v. Borough of Kennett Square,* 4 F.3d 186, 193 (3d Cir. 1993).

The parties dispute whether Plaintiff received advance notice of the hearing, and whether Plaintiff was told he could have an attorney present at the hearing. However, even if Plaintiff did not receive advance notice, and was not allowed to have an attorney present, it does not appear that his procedural due process rights have been violated. Under *Edmundson*, notice provided on the morning of the hearing is adequate. *See id.* at 193. In addition, it is not clear that Plaintiff had a procedural due process right to consult with an attorney prior to his pretermination hearing. The Third Circuit has declined to determine when advance notice may be required to enable an employee to consult with an attorney prior to his pretermination hearing. *See Morton v. Beyer,* 822 F.2d 364, 371 n.11 (3d Cir. 1987). Plaintiff has not cited any case law suggesting that he was entitled to advance notice, in order to consult with his attorney, in this particular case.

In *Edmundson*, the plaintiff was called to a meeting where he was informed of the charges against him, and allowed to respond to them. The Third Circuit held that the plaintiff was given adequate notice of the hearing, and that "the pretermination hearing complied with due process." 4 F.3d at 193-94. In the present case, the evidence viewed in the light most favorable to Plaintiff suggests that he was called into a meeting with Chief Hudson, informed of the charges against him, and offered an opportunity to respond to the charges. Under *Edmundson,* the procedures taken by Defendants complied with due process. Defendants' motion for summary judgment on Plaintiff's claim that Defendants violated his procedural due process rights will be granted.

12

### 2.   Liberty Interest in Reputation

Harm to one's reputation, alone, is not a liberty interest implicated by the procedural due process clause. *See Paul,* 424 U.S. at 712. The Third Circuit has held that, "[a]bsent the alteration or extinguishment of a more tangible interest, injury to reputation is actionable only under state defamation law." *Sturm v. Clark,* 835 F.2d 1009, 1012 (3d Cir. 1987). Defendants' motion for summary judgment regarding Plaintiff's claim that Defendants violated his liberty interest in his reputation will be granted.

### C.   Right to Association

Plaintiff alleges that Defendants violated his First Amendment right to associate with fellow police officers and collective bargaining unit members. Defendants move for summary judgment on the grounds that the First Amendment right to association only applies in family situations. However, the Supreme Court has

> recognized that "one of the foundations of our society is the right of individuals to combine with other persons in pursuit of a common goal by lawful means," *NAACP v. Clairborne Hardware Co.,* 458 U.S. 886, 933, 102 S.Ct. 3409 (1982), and our recognition of this right encompasses the combination of individual workers together in order [to] better assert their lawful rights. *See e.g. Railroad Trainmen v. Virginia,* 377 U.S. 1, 5-6, 84 S.Ct. 1113, 1116-17 (1964).

*Lyng v. Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW,* 485 U.S. 360, 364, 108 S.Ct. 1184 (1988). As the First Amendment right to association does extend to union members, Defendants' motion for summary judgment on Plaintiff's right to association claim will be denied.

### D.   Right to Privacy

Plaintiff alleges that Defendants engaged in surveillance of Plaintiff's residence,

and the daily activities of Plaintiff and his family, in violation of Plaintiff's First Amendment right to privacy. Defendants move for summary judgment on Plaintiff's First Amendment privacy claim, and correctly note that Plaintiff has not offered any evidence in support of this claim. Thus, "there is an absence of evidence to support [Plaintiff's] case." *Celotex Corp. v. Catrett,* 477 U.S. at 325. Defendants' motion for summary judgment regarding Plaintiff's First Amendment privacy claim will be granted.

**5.    ADA**

Defendants move for summary judgment on the grounds that Plaintiff has not established a violation of the ADA.

Under the ADA, private employers must provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship. . . ." 42 U.S.C. § 12111(b)(5)(A). "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

In order to state a prima facie case of disability discrimination, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation by the employer; and (3) he has suffered an adverse employment decision as a result of disability discrimination. *See Shaner v. Synthes,* 204 F.3d 494, 500 (3d Cir. 2000). Once the plaintiff has established a prima facie case of disability discrimination, the burden

14

shifts to the defendant to state a legitimate, non-discriminatory reason for the employment action. *See id.* Once the defendant satisfies this burden, the plaintiff must prove, by a preponderance of the evidence, that the legitimate reasons offered by the defendant are a pretext for discrimination. *See id.* While the burden of production shifts back and forth between the parties, the ultimate burden of persuasion remains with the plaintiff. *See id.* at 500-01. In the present case, Defendants dispute whether Plaintiff is disabled, and whether Plaintiff can show pretext for discrimination. Because I find that Plaintiff is not disabled, Defendants' motion for summary judgment regarding Plaintiff's ADA claim will be granted.

Under the ADA, "disability" means: (1) "a physical or mental impairment that substantially limits one or more of the major life activities of such individual;" (2) "a record of having such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2). In the present case, Plaintiff alleges that he is disabled because he has diabetes, because Defendants know that he has a bad back, and because Defendants have questioned his mental stability. Thus, Plaintiff alleges that he is disabled under all three (3) prongs of the definition. Plaintiff's actual disability claim is not undercut by his alternative perceived disability and regarded as disabled claims. *See Taylor v. Pathmark Stores, Inc.,* 177 F.3d 180, 189 (3d Cir. 1999).

### A.    Physical Impairment

Plaintiff argues that diabetes is recognized as a disability under the ADA. However, the case that Plaintiff cites in support of this argument, *Sutton v. United Airlines Inc.,* 527 U.S. 471, 119 S.Ct. 2139 (1999), actually suggests that a diabetic should not be considered disabled, based on his medical diagnosis as a diabetic, if the illness "does not

impair his or her daily activities. . . ." *Id.* at 484.  The Supreme Court has since noted that,

> [i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impediment.  Instead, the ADA requires those claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial.  That the Act defines "disability" with respect to an individual makes clear that Congress intended the existence of a disability to be determined in such a case by case manner.

*Toyota Manufacturing, Kentucky, Inc., v. Williams*, 122 S.Ct. 681, 691-92 (2002) (citations omitted).  Thus, rather than relying on a medical diagnosis, a plaintiff must show that his impairment "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  *Id.* at 691.  These activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(*i*).

In the present case, Plaintiff has not offered evidence that his diabetes prevents or severely restricts him from performing activities of central importance to his daily life.  Thus, Plaintiff's diabetes are not a disability under the first prong of the definition.

## B.    Record of Being Disabled

"A plaintiff attempting to prove the existence of a 'record' of disability still must demonstrate that the recorded impairment is a 'disability' within the meaning of the ADA." *Tice v. Centre Area Transportation Auth.*, 247 F.3d 506, 513 (3d Cir. 2001).  In the present case, Plaintiff has not offered any evidence suggesting that his back injury is a physical impairment under the ADA.  There is no evidence that Plaintiff's back injury prevents him from performing activities of central importance to his daily life.  Thus, I find

16

that Plaintiff does not have a record of being disabled due to his back injury.

### C.    Perceived Disability

A plaintiff is regarded as having a disability if he:

> (1)    Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
>
> (2)    Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3)    Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

*Taylor,* 177 F.3d at 187 (quoting 29 C.F.R. § 1630.2(*l*)).  To be regarded as substantially

limited in the major life activity of working, the plaintiff must be regarded as unable to

perform a broad class of jobs, and not simply regarded as unable to perform one (1)

particular job.  *See Murphy v. United Parcel Service,* 527 U.S. 516, 523, 119 S.Ct. 2133

(1999); *Tice,* 247 F.3d at 514.

A plaintiff may make out a case for perceived disability where the employer

innocently misinterpreted information about an employee's workplace limitations.  *See*

*Taylor,* 177 F.3d at 190-91.  The Third Circuit has held that,

> [a]n employer can rely on an employee's information about restrictions, but it has to be right when it decides that these restrictions are permanent and that they prevent the employee from performing a wide class of jobs, as opposed to one particular and limited job.  ***An employer who simply, and erroneously, believes that a person is incapable of performing a particular job will not be liable under the ADA.***  Liability attaches only to a mistake that causes the employer to perceive the employee as disabled within the meaning of the ADA, i.e., a mistake that leads the employer to think that the employee is substantially limited in a major life activity.

*Id.* at 191-92 (emphasis added).

17

In the present case, Plaintiff has not submitted evidence that he was regarded as disabled due to his back injury. Plaintiff injured his back on December 25, 1998, and did not return to work until May 21, 1999. (Doc. 28 at 448-50.) When Plaintiff returned to work, his physician, Dr. Duffy, restricted him to the day shift, with orders to avoid becoming involved in altercations and to avoid sitting for extended periods of time. (*See id.* at 417-18, 536-37.) Chief Hudson responded to this restriction by placing Plaintiff on the day shift, and restricting him to office work. (*See id.* at 505.) Chief Hudson has testified that he did not believe it was appropriate to send Plaintiff out on patrol because of his medical limitations, as officers on patrol spend a lot of time sitting in their cars and may encounter altercations.[2] (*See id.*) Chief Hudson did allow Plaintiff to get up and walk around if his back was bothering him. (*See id.* at 419.) On September 21, 1999, Dr. Amentler issued a report stating that Plaintiff should avoid "long-term sitting," and needed to "get up frequently and move around." (*See id.* at 531-32.) In December 1999, Dr. Duffy prescribed pain medication to Plaintiff to help alleviate his back pain, and sent a note to Plaintiff's employer stating that Plaintiff's injury was exacerbated by too much sitting. (*See id.* at 419.) On April 28, 2000, Dr. Amentler issued another report, stating that Plaintiff should be standing and moving at least sixty-six percent (66%) of the workday. (*See id.* at 537.) When Plaintiff returned to work after taking a couple days off in late April, Dr. Gorski issued a memo stating that Plaintiff was to return to "full duty which will alleviate the aggravation of the back injury." (*See id.* at 532.) Chief Hudson repeatedly interpreted the doctors' notes to mean that Plaintiff could not work as a

---

[2]Plaintiff has testified that, in the past, he has only encountered altercations while working the night shift. (Doc. 28 at 489.)

patrolman.

Plaintiff has not shown that he was regarded as unable to perform a wide class of jobs, rather, he was regarded as unable to perform on particular and limited job, *viz*, patrol. As there is no evidence that Chief Hudson believed Plaintiff was substantially limited in a major life activity, it is irrelevant whether Chief Hudson was correct when he observed that Plaintiff was unable to serve as a patrolman. I find that Plaintiff's back injury is not a perceived disability.

Plaintiff also argues that Defendants perceived him as disabled because they ordered him to undergo a mental health examination. The act of ordering Plaintiff to undergo a mental health examination, while humiliating, does not create a perceived disability under the ADA. Defendants' motion for summary judgment regarding Plaintiff's ADA claim will be granted.

### 6.    Abuse of Process & Wrongful Use of Process

Under Pennsylvania law, abuse of process occurs "when the legal process is utilized for some unlawful purpose, not one for which it was intended." *Shaffer v. Stewart*, 473 A.2d. 1017, 1019 (Pa. Super. Ct. 1984).

> The common law tort of abuse of process involves the perversion of [the] legal process after it has begun, in order to achieve a result for which the process was not intended. . . . *It is not enough that the defendant had bad or malicious intentions or that the defendant acted from spite or with an ulterior motive.* Rather, there must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action. *There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.*

*Al Hamilton Contracting Co. v. Cowder,* 644 A.2d 188, 191 (Pa. Super. Ct. 1994) (citations omitted) (emphasis added). In the present case, Plaintiff's abuse of process claim fails because Plaintiff alleges only that Defendants initiated the proceedings against him with improper motive, and not that Defendants made additional threats or acts against him, or that Defendants used the process to blackmail or coerce him.

Plaintiff argues that his abuse of process claim should be analyzed under 42 PA. CONST. STAT. ANN. § 8351. Section 8351 creates a cause of action for wrongful use of process, not abuse of process. Although the two torts are often confused, they are distinct. *See Al Hamilton,* 644 A.2d at 191 (citing *McGee v. Feege,* 535 A.2d 1020, 1023 (Pa. 1987)); *Hart v. O'Malley,* 647 A.2d 542, 546 (Pa. Super. Ct. 1994). "The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it. Malicious use of civil process has to do with the wrongful initiation of such process." *Hart,* 647 A.2d at 546. In order to succeed on a claim of wrongful use of process, a plaintiff must show: (1) that the underlying proceedings were terminated in their favor; (2) that the defendant caused those proceedings to be instituted without probable cause; and (3) that the proceedings were instituted for an improper purpose. *Bannar v. Miller,* 701 A.2d 232, 238 (Pa. Super. Ct. 1997), *appeal denied,* 723 A.2d 1024 (1998).

In the present case, Plaintiff has alleged facts sufficient to state a claim for wrongful use of process. Plaintiff alleges that Defendants brought disciplinary actions against him pursuant to Pennsylvania's Police Tenure Act without a legal basis for doing so, in order to harass, discredit and ultimately terminate him. (Doc. 1 at 14.) The question thus becomes whether Plaintiff has produced evidence to support his wrongful

use of process claim. The first prong is satisfied, as the initial ruling against Plaintiff was vacated and remanded by the Luzerne County Court of Common Pleas, and no further disciplinary action was taken. Under the second prong, probable cause exists where the party bringing the underlying action reasonably believes in the existence of facts upon which the claim is based, and reasonably believes that, under those facts, the claim may be valid under the existing or developing law. *See Bannar,* 701 A.2d at 237 (citing 42 PA. CONST. STAT. ANN. § 8352). In the present case, it is not clear that Defendants lacked probable cause for their action. Defendants offer evidence that, while other police officers may assist ambulances as part of their duties, they are not allowed to lift stretchers, drive the ambulances or perform work usually performed by Emergency Medical Technicians. (Doc. 27, Ex. B at 172-73.) Plaintiff offers evidence that another police officer **rode** with ambulances without reprimand; however, this does not refute Defendants' evidence that police officers may assist ambulances, but may not **drive** the ambulances. Plaintiff argues that Defendants' lack of probable cause may be inferred from the fact that Defendants proceeded under the Police Tenure Act, rather than the collective bargaining agreement. Lack of probable cause may be shown where a case is dismissed for failure to establish a prima facie case, *see Buchleitner v. Perer,* 794 A.2d 366, 377 (Pa. Super. Ct. 2002), but the Court is not aware of any case holding that lack of probable cause may be shown by failure to bring suit under the proper statute. Plaintiff's inability to establish probable cause is not fatal to Plaintiff's wrongful use of process claim; "the failure of the 'probable cause' prong under the statute does not necessarily defeat the entire cause of action for wrongful use of civil proceedings, as 'the clear language of Section 8351 permits a cause of action to be based on gross negligence *or* lack of probable cause."

*Buchleitner,* 794 A.2d at 377-78 (Pa. Super. Ct. 2002) (quoting *Bannar,* 701 A.2d at 249) (emphasis in original).  Under the third prong, Plaintiff urges the Court to infer improper intent from Defendants' failure to pursue further disciplinary action against Plaintiff after the case was vacated and remanded by the Court of Common Pleas.  In addition to the lack of case law suggesting that abandonment of a claim is evidence of improper purpose, it appears that Defendants' decision not to continue pursuing the claim was concurrent with Plaintiff's injury to his back and subsequent five (5) month absence from work.  Defendants' decision to continue pursuing a disciplinary action against an injured employee would be appear to be greater evidence of improper purpose than Defendants' decision not to continue pursuing such a claim.  Defendants' motion for summary judgment regarding Plaintiff's claim for wrongful use of process will be granted.

**(7)     Loss of Consortium**

Defendants move for summary judgment on Plaintiff Lucinda Jordan's loss of consortium claim.  Defendant's argue that, if Plaintiff Douglas Jordan's claims are dismissed, then Plaintiff Lucinda Jordan's loss of consortium claim must be dismissed as well.  As one of her husband's claims remains, Defendants' motion for summary judgment regarding Plaintiff Lucinda Jordan's loss of consortium claim will be denied.

## CONCLUSION

Given the complexities of this case, a review of the remaining claims may be helpful. Plaintiff Douglas Jordan's First Amendment freedom of association claim, pursuant to § 1983, remains, as does Plaintiff Lucinda Jordan's claim for loss of consortium. Plaintiff's other claims will be dismissed.

An appropriate order will follow.

_May 15, 2002_
Date

A. Richard Caputo
United States District Judge

23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DOUGLAS K. JORDAN and LUCINDA  :
JORDAN, Husband and Wife,              CIVIL ACTION NO. 3:CV-00-1915

      Plaintiffs,                 :

      vs.                        :

ROBERT J. STANZIOLA, ET AL.,    (JUDGE CAPUTO)

      Defendants.            :

*FILED SCRANTON MAY 15 2002 PER ___ DEPUTY CLERK*

### ORDER

NOW, this _15th_ day of May, 2002, **IT IS HEREBY ORDERED** that Defendants'

motion for summary judgment (Doc. 24) is **GRANTED in part and DENIED in part**:

    (1)    Defendants' motion for summary judgment regarding Plaintiffs' First
            Amendment privacy claim and Fourteenth Amendment substantive and
            procedural due process claims is **GRANTED**.

          A.      Plaintiffs' First Amendment privacy claim and Fourteenth Amendment
                    substantive and procedural due process claims are **DISMISSED**.

    (2)    Defendants' motion for summary judgment regarding Counts II, III, IV, and V
            is **GRANTED**.

          A.      Counts II, III, IV and V are dismissed.

    (3)    Defendants' motion for summary judgment is otherwise **DENIED**.

A. Richard Caputo
United States District Judge

24